IN THE UNITED STATES DISTRICT OF NEW YORK
FOR THE EASTERN DISTRICT OF NEW YORK

In re Benjamin O. Ringel, Debtor.

BENJAMIN O. RINGEL, Appellant,

v.

ALLAN B. MENDELSOHN, TRUSTEE
JDWC, LLC, ATALAYA ASSET INCOME FUND II LP, and
LMEZZ 250 W90 LLC, Appellees.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**APPELLANT'S BRIEF IN OPPOSITION TO DISMISSAL
OF THE APPEAL ON STANDING GROUNDS**

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Attorneys for Appellant*
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700

Of Counsel:
    Kevin J. Nash, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..ii
PRELIMINARY STATEMENT…………………………………………………...…………..1
BACKGROUND…………..…………………………………………………………………...7
ARGUMENT……………………………………………………………………………….10

The Settlement Order Directly and Adversely Impacts the
Chapter 7 Debtor's Pecuniary Interests……………………………………………...…10

CONCLUSION……………………………………………………………………..17

# TABLE OF AUTHORITIES

Cases

*In re 60 East 80th Street Equities, Inc.*,
218 F.3d 109 (2d Cir. 2000)……………..………………………………………………10, 16

*In re Aguina*,
No. 22-60005, 2023 WL 195546, at *1 (9th Cir. Jan. 17, 2023)…………………………….10

*In re Friedberg*,
634 F. App'x. 333 (2d Cir. 2016).………………………………………………………..16

*In re Licata*,
659 F. App'x. 704 (2d Cir. 2016)……………………………………………………..10, 15

*In re Lynch*,
Adv. Proc. No. 19-08119, 2021 WL 1536392, at *3 (Bankr. E.D.N.Y. Apr. 15, 2021).……10, 15

*In re Mandel*,
641 F. App'x. 400 (5th Cir. 2016)……………………………………………………13-14

*In re Morgan*,
No. 05-34981-SGJ-7, 2007 WL 2669341, at *1 (Bankr. N.D. Tex. Sept. 6, 2007)…………..11-12

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
478 F.3d 452 (2d Cir. 2007)…..………………………………………………………3-4

*In re Nordlicht*,
115 F.4th 90 (2d Cir. 2024)………………………………………………………...4-5

*Truck Ins. Exch. v Kaiser Gypsum Co., Inc.*,
602 U.S. 268 (2024)…………………………………………………………………..12-13

*Quest Ventures, Ltd. v. IPA Management IV, LLC*,
No. 17-CV-4026 (JMA), 2018 WL 922145, at *1 (E.D.N.Y. Feb. 5, 2018)………………….14-15

Statutes

11 U.S.C. § 1109……………………………………………………………….13-14

Fed. R. Bankr. Proc. 9019……..…………...……………………………………………...13

Benjamin O. Ringel (the "Chapter 7 Debtor" or "Mr. Ringel") respectfully submits this brief in opposition to the motion of Allan B. Mendelsohn (the "Chapter 7 Trustee") seeking to dismiss (the "Dismissal Motion") [ECF No. 7] the Chapter 7 Debtor's appeal filed herein (joined by JDWC, LLC ("JDWC") [ECF No. 9]). For the reasons set forth herein, the Dismissal Motion should be denied as the Chapter 7 Debtor retains sufficient standing to appeal the Bankruptcy Court Order approving the settlement of the Litigation Claims.

## PRELIMINARY STATEMENT

Like many people, the Chapter 7 Debtor's need for bankruptcy relief arose out of an imminent foreclosure sale of his personal residence in Lawrence, New York. However, unlike most individual personal bankruptcies, the Chapter 7 Debtor was an active real estate investor whose companies were landlords to many national tenants that encountered financial distress and caused Mr. Ringel's companies to restructure through their own properties under Chapter 11 cases filed in the Southern District of New York.

In connection therewith, lenders in those Chapter 11 cases (JDWC, LLC, Atalaya Asset Income Fund II LP, and LMEZZ 250 W90 LLC) (the "Judgment Creditors") spent over five years engaging in intense litigation (both in New York and New Jersey) to recover funds from Mr. Ringel who was never a direct borrower but rather issued limited guaranties. These litigations centered upon determining if

the Chapter 7 Debtor has residual liability under various carve-out guaranties made in connection with various real estate loans to the Chapter 7 Debtor's affiliated operating companies.

The Chapter 7 Debtor had challenged the judgments under the theory that the Judgment Creditors were fully paid through alternate means, including: (a) dispositions and sales of the underlying collateral in the context of a 363 bankruptcy sale involving the affiliates; and (b) the Judgment Creditor (or a related party) taking title to collateral that had a value which exceeded the Chapter 7 Debtor's residual liabilities. Prior to bankruptcy, the Chapter 7 Debtor had just retained a new state court counsel, Meister Seelig & Fein ("Meister Seelig"), to attempt to establish that the Judgment Creditors' obligations had been satisfied. This was being pursued primarily in the form of an appeal of a Turnover Order and related proceedings in New York and a reconsideration motion in New Jersey (the "Litigation Claims"). Both matters were still alive at the time of the commencement of bankruptcy on April 15, 2024.[1]

---

[1] LMEZZ 250 W90 LLC ("LMEZZ"), which is a wholly owned subsidiary of Ladder Capital Finance, asserts that it is owed $13,000,000 after it took title to a retail condo through a confirmed bankruptcy plan in the AC I Southwest Broadway Chapter 11 case. The Chapter 7 Debtor alleges that the condo had a value of $37 million. The Bankruptcy Court handling the corporate bankruptcy case in the Southern District of New York made no finding on the value of the retail condo nor an allocation regarding million of dollars in payments to LMEZZ's parent because those issues only affected the Chapter 7 Debtor and did not impact AC I Southwest Broadway directly. Thus, the allocations were relegated to a different forum. Meister Seelig

The Chapter 7 Debtor saw the Litigation Claims as a means to challenge the Judgment Creditors' claims and potentially reduce, if not eliminate, his residual liability.

Unfortunately, the Chapter 7 Debtor's legs were taken out from under him after witnessing the Chapter 7 Trustee enter into a settlement with the Judgment Creditors that effectively eliminated any opportunity to further contest the residual amounts owed. The Chapter 7 Trustee rubberstamped the positions taken by the Judgment Creditors and agreed to releases and discontinuances, while resisting all overtures by the Chapter 7 Debtor to challenge either the underlying amounts owed or the settlement itself.

At the time of the settlement, the Chapter 7 Debtor was acting *pro se* and sought an adjournment of the Chapter 7 Trustee's motion under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") to approve the settlement with the Judgment Creditors. The adjournment request was denied. The Chapter 7 Debtor did his best to prepare opposition, *pro se*, but he lacked the necessary experience in bankruptcy matters to raise the full scope of potential objections. The Bankruptcy Court entered an Order approving the settlement (the "<u>Settlement Order</u>") after weighing the various factors under *Motorola, Inc. v.*

---

was readying a motion to compel LMEZZ to issue a satisfaction to the Chapter 7 Debtor when the bankruptcy was filed.

*Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (2d Cir. 2007). The Settlement Order is now being appealed. Thereafter, the Chapter 7 Debtor retained counsel and moved for reconsideration of the approval of the settlement under the rationale of the Second Circuit decision in *In re Nordlicht*, 115 F.4th 90, 100–102 (2d Cir. 2024) ("<u>Nordlicht</u>"). In *Nordlicht*, the Second Circuit viewed a debtor's litigation claims as constituting a property right, which should have been the subject of a Section 363 competitive sale process in bankruptcy—with the claims sold to the highest bidder, rather than simply settled by the Chapter 7 Trustee on an up or down basis pursuant to Bankruptcy Rule 9019(a). The Bankruptcy Court denied reconsideration pursuant to Order dated January 2, 2025 (the "<u>Reconsideration Order</u>"), which is also being appealed.

In connection with the two appeals, the Chapter 7 Trustee has raised a threshold issue of whether the Chapter 7 Debtor had any standing to even lodge an objection or appeal. According to the Chapter 7 Trustee, he (and he alone) retains control over disposition of the Litigation Claims; and the Chapter 7 Debtor cannot even be heard to object to how the Chapter 7 Trustee disposed of those claims. In the Chapter 7 Trustee's view, the Chapter 7 Debtor is nothing more than a potted plant in his own personal bankruptcy case (reminiscent of Brendan Sullivan's protest while defending Oliver North during the Iran-Contra hearing). The Chapter 7 Trustee takes this exclusionary position even though the settlement of the Litigation

4

Claims will have a profound impact on the Chapter 7 Debtor's current and future financial condition.

To be sure, a bankruptcy trustee is conferred with the duty to collect and marshal assets of the bankruptcy estate under Section 704 of the Bankruptcy Code. However, this mandate cannot automatically exclude an individual debtor from being heard in his own Chapter 7 case on issues impacting the allowance of claims and potential solvency of his bankruptcy estate. While the Chapter 7 Trustee is quick to point out that he views the case as being insolvent, that is only so because there was no effort to challenge the residual amounts of the Judgment Creditors' claims. The Chapter 7 Trustee made no effort to seek allocations from the Judgment Creditors based upon realization of other collateral and prior payments.

Recognizing that the issue of the Chapter 7 Debtor's standing presents a key threshold issue, the parties have agreed upon a bifurcation to address the standing question in advance of a full exploration of the substantive issues raised by the appeal concerning application of the Second Circuit decision in *Nordlicht* and whether it was error for the Bankruptcy Court to decline the Chapter 7 Debtor's request for a 30-day adjournment to retain counsel so he could better respond to the proposed settlement.

The Chapter 7 Debtor is, in fact, an aggrieved person who is directly and adversely impacted by the settlement because he has lost any meaningful

5

opportunity to challenge the residual obligations claimed by the Judgment Creditors. The Chapter 7 Debtor has not yet been granted a discharge in bankruptcy.[2] Thus, Mr. Ringel still faces the very real prospect of enduring personal liability even after bankruptcy. This circumstances also puts a premium on the Chapter 7 Debtor obtaining the highest and best price for the Litigation Claims so the estate is increased and more funds are available so as to reduce Mr. Ringel's potential claims exposure. Additionally, if the Chapter 7 Debtor is successful in pursuit of the Litigation Claims, the entire complexion of the bankruptcy case potentially changes, including the possibility that a surplus could potentially materialize if the claims of the Judgment Creditors are eliminated. Thus, the disposition of the Litigation Claims should have been made subject to an auction process for a multitude of reasons. In view of his direct financial stake, Mr. Ringel has appropriate constitutional and prudential standing to pursue and continue with the appeals challenging the procedures employed by the Chapter 7 Trustee in settling the Litigation Claims.

---

[2] The Chapter 7 Trustee has moved to extend the time to object to the Chapter 7 Debtor's discharge three times, most recently requesting that the time be extended through June 30, 2025. Indeed, given the history and tension between the Chapter 7 Trustee and Chapter 7 Debtor, it readily appears that the Chapter 7 Trustee will eventually file objections to discharge, which will likely be joined by one or more of the Judgment Creditors.

## BACKGROUND

**A. General Background**

The Chapter 7 Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 15, 2024 under exigent circumstances not directly related to the Litigation Claims. At the time, the Chapter 7 Debtor faced the prospect of a foreclosure sale of his principal residence and sought immediate bankruptcy relief under Chapter 7.

The foreclosure sale came about over a mortgage default of approximately $140,000, which Mr. Ringel intended to cure. Mr. Ringel believes his original bankruptcy counsel misread a prior state court order and unnecessarily created the need for an emergency filing. The case was filed under Chapter 7 of the Bankruptcy Code in the belief that the Chapter 7 Debtor retained an absolute right to convert his case to Chapter 11 and proceed as a debtor-in-possession. As a debtor-in-possession, Mr. Ringel's standing could not be questioned, and he is reserving the right to re-file a motion to convert the case to Chapter 11 as a further means to address the Chapter 7 Trustee's standing objections.

On October 23, 2024, the Chapter 7 Trustee filed the Settlement Motion pursuant to Bankruptcy Rule 9019. The settlement between the Judgment Creditors and the Chapter 7 Trustee relates to three parcels of real property located in Lakewood, New Jersey and satisfaction of the claims of the Judgment Creditors

against the Chapter 7 Debtor in exchange for full releases from the estate.

Each of the Settling Creditors has a pre-petition judgment against the Chapter 7 Debtor, which was vigorously challenged for years by the Chapter 7 Debtor. Indeed, the Chapter 7 Debtor duly listed the Litigation Claims in his bankruptcy schedules but did not assign a value to them given the pending litigations in New York and New Jersey. The Settlement Motion effectively put an end to those legal challenges for the sole benefit of the Judgment Creditors.

**B. Scope of the Litigation Claims**

The Chapter 7 Debtor indirectly owned a portion of the three properties (the "Lakewood Properties") through his ownership of entities known as BR Lakewood, LLC, BCR 12th and Carey Realty, LLC, and BCR Gertner's Realty, LLC. One of the Lakewood Properties (the "Pinewood Property") was sold in connection with a settlement of a dispute between the owners of the Pinewood Property. The litigation between the Chapter 7 Debtor and Atalaya Asset Income Fund II LP ("Atalaya") focused on whether Atalaya was fully paid on its loan after foreclosing on the collateral. Despite realizing full payment through its collateral, Atalaya obtained an Order for the turnover of the Chapter 7 Debtor's 100% ownership interest in BR Lakewood, LLC based upon his guaranty. The Chapter 7 Debtor has appealed the turnover order.

The Chapter 7 Debtor also filed a motion to reconsider the judgment in favor

of JDWC. Mr. Ringel's appeal of the Order denying reconsideration of the New Jersey judgment was also pending at the time of bankruptcy.

Moreover, Atalaya obtained Bankruptcy Court authority in Mr. Ringel's Chapter 7 case to distribute BR Lakewood's portion of the proceeds of the sale of the Pinewood Property in the sum of approximately $19.4 million to the Judgment Creditors. This distribution reduced the Judgment Creditors' claims against the Chapter 7 Debtor's estate by approximately $16.2 million without any hearing to determine whether the Judgment Creditors' claims had previously been satisfied prior to the distribution from the sale of the Pinewood Property.

**C. Efforts to Challenge the Settlement**

The Chapter 7 Debtor unsuccessfully opposed the Settlement Motion *pro se*, and the Bankruptcy Court entered the Settlement Order on November 22, 2024. On December 6, 2024, the Chapter 7 Debtor, through the undersigned, filed a motion to reconsider (the "Reconsideration Motion") entry of the Settlement Order, arguing that the Litigation Claims should have been marketed and sold in a competitive bankruptcy sale process under the protocols of 11 U.S.C. § 363 rather than settled pursuant to Bankruptcy Rule 9019. The Bankruptcy Court denied the Reconsideration Motion on January 2, 2025. On January 14, 2025, the Chapter 7 Debtor filed a notice of appeal of both the Settlement Order and Reconsideration Order.

# ARGUMENT

## THE SETTLEMENT ORDER DIRECTLY AND ADVERSELY IMPACTS THE CHAPTER 7 DEBTOR'S PECUNIARY INTERESTS

"To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an aggrieved person, a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000). In the context of a Chapter 7 debtor's standing, it is also well-established that a Chapter 7 debtor "has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid." *Id.* at 115.

For a Chapter 7 debtor to establish standing, he or she has the burden of proof in "showing that there is at least a reasonable possibility of a surplus." *In re Lynch*, Adv. Proc. No. 19-08119, 2021 WL 1536392, at *3 (Bankr. E.D.N.Y. Apr. 15, 2021) (quoting *In re Licata*, 659 F. App'x 704, 706 (2d Cir. 2016)). Further, the Ninth Circuit Court of Appeals has also upheld a Chapter 7 debtor's standing where there was "a possibility—however remote" that the challenged settlement order, if vacated, would have led to a surplus for the debtor. *In re Aguina*, No. 22-60005, 2023 WL 195546, at *1 (9th Cir. Jan. 17, 2023).

In opposing the Settlement Motion, both as a *pro se* litigant and through counsel, the Chapter 7 Debtor submitted evidence regarding the potential value of

the Litigation Claims against the Judgment Creditors. For example, <u>Exhibit</u> "C" to the Reconsideration Motion was accompanied by letters from the Chapter 7 Debtor's counsel in the New Jersey litigation, which highlight the potential underlying value of the Litigation Claims even on a post-judgment basis as well as potential adverse tax consequences that could result from the disposition of the Pinewood Property through judgment enforcement.

The Chapter 7 Trustee attempts to corner the Chapter 7 Debtor in a "Catch-22" situation in arguing that his bankruptcy schedules demonstrate he is hopelessly insolvent while completely ignoring the uncertainty of the potential value of the Litigation Claims and whether, if fully pursued, the Litigation Claims could have eliminated big chunks of the Chapter 7 Debtor's debt to potentially net a surplus. It is this possibility alone that confers the Chapter 7 Debtor with standing here.

Indeed, without the settlement and release of the Litigation Claims, it cannot be said that there will be no assets whatsoever to distribute to the Chapter 7 Debtor's creditors in his Chapter 7 case under any set of circumstances. To the contrary, a possibility does exist and courts have conferred a Chapter 7 debtor with standing in similar circumstances.

For example, in *In re Morgan*, No. 05-34981-SGJ-7, 2007 WL 2669341, at *3–*4 (Bankr. N.D. Tex. Sept. 6, 2007), the bankruptcy court held that a Chapter 7 debtor had standing to pursue a claim objection even though the creditor argued that

11

the debtor lacked standing because the claims register showed over $12 million in filed claims against the Debtor and that the case was a no-asset case in which the debtor will never realize a return of assets. *Id.* at *4. The bankruptcy court rejected the argument because:

> . . . the trustee filed a report with this court concluding that there are assets in this case to administer and a proof of claim bar date was set (the court has taken judicial notice of same). Too, the trustee has employed counsel and an accounting firm to assist him in the administration of the estate including investigation of the assets of the Debtor. So it is not apparent that this case is a no-asset case, as 8400 Expressway suggests.

*Id.* The Bankruptcy Court ended its standing analysis with the following apt observations that are just as applicable here: "[t]he court agrees with the Debtor that he has a potential pecuniary and otherwise colorable interests in the outcome of the Claim Objection based upon: (a) the amount of assets and claims still being very uncertain; and (b) the ultimate outcome of the discharge litigation/appeals being uncertain." Likewise, the Chapter 7 Debtor here has a pecuniary interest in the manner in which the Litigation Claims are disposed of for the same type of reasons, chiefly the overall assets and claims in the bankruptcy estate are still uncertain.

Although arising in the context of a Chapter 11 case, the core rationale underlying the Supreme Court decision in *Truck Ins. Exch. v Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024), issued last year, expanding the scope of a "party in interest" under 11 U.S.C. § 1109 to include third-party insurers, is also worthy of

consideration. In *Gypsum*, *supra*, third party insurers were found to have an interest in objecting to a plan of reorganization, notwithstanding the lower courts' findings that the plan in question was "insurance neutral." In reaching this result, the Supreme Court took an expansive view of who constitutes a party in interest, explaining:

> "The general theory behind [§ 1109(b)] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." 7 Collier on Bankruptcy ¶1109.01 (16th ed. 2023). This understanding aligns with this Court's observation that Congress uses the phrase "'party in interest'" in bankruptcy provisions when it intends the provision to apply "broadly.

*Id.* at 277–78. While admittedly, the provisions of Section 1109 do not directly apply to this Chapter 7 case, the overriding rationale of expanding the concept of a "party in interest" supports the Chapter 7 Debtor's contention of viewing standing in the broadest possible light. This is even more so under Bankruptcy Rule 9019, which specifically directs that notice of a proposed settlement be given not to the general class of a "party in interest" but to a specific list of persons, including the debtor. Notice to a debtor would be pointless if the debtor has no standing to be heard.

Another decision upholding a debtor's standing was rendered in *In re Mandel*, 641 F. App'x. 400 (5th Cir. 2016). There, the Fifth Circuit held that a Chapter 7

13

debtor had standing to pursue an appeal of a claim allowance where the debt at issue *may* not be discharged, exposing the debtor to personal liability. *Id.* at 403. The Fifth Circuit reasoned that the debtor had a sufficient pecuniary interest in prosecuting an appeal of the claim allowance because the creditors subject to the claim allowance order had filed a complaint to except the debt from discharge, which the bankruptcy court had yet to rule on. *Id.*

Those very same uncertainties, at least with respect to the Chapter 7 Debtor's personal liability on nondischargeable debts, are present here. Without the benefit of a discharge, the Chapter 7 Debtor retains a pecuniary interest in prosecuting the appeal, the success of which, will impact the monetary return to his bankruptcy estate, thereby reducing his personal liability on any nondischargeable debt. In other words, the Settlement Order impacts Mr. Ringel financially in two specific ways: (i) he has no way to reduce his personal liability without the Litigation Claims, which is critical if he does not receive a discharge; and (ii) the value of the Litigation Claims was not maximized, which is also important from the standpoint of distributions to Mr. Ringel's other creditors on account of their claims.

For his arguments against the Chapter 7 Debtor's standing, the Chapter 7 Trustee heavily relies on *Quest Ventures, Ltd. v. IPA Management IV, LLC*, No. 17-CV-4026 (JMA), 2018 WL 922145, at *1 (E.D.N.Y. Feb. 5, 2018). That case, however, stands for the proposition that a corporation's management cannot contest

14

a conversion to Chapter 7 on a corporate debtor's behalf once a Chapter 7 trustee is appointed on an interim or permanent basis. *Id.* at *2. Such a holding is inapplicable to the Chapter 7 Debtor's case because he is an individual with different rights and obligations, including the ability to obtain a discharge, which does not exist for a corporation. Further, this Court noted that "management could have appealed the Conversion Order in their own right, 'as persons aggrieved,' if they could demonstrate that they 'have been injured peculiarly.'" *Id.* at *3 (quoting *In re C.W. Mining Co.*, 636 F.3d 1257 (10th Cir. 2011)). The Chapter 7 Debtor appealed the Settlement Order in his own right because the Settlement Order implicated his pecuniary interests.

Likewise, the Court should not be dissuaded by some of the cases in this Circuit that refused to confer standing on a Chapter 7 Debtor as they are all distinguishable. For example, in *In re Licata*, 659 F. App'x. 704 (2d Cir. 2016), the Second Circuit affirmed the district court's holding that a Chapter 7 debtor lacked standing to object to a sale of assets because he could not show a reasonable possibility of a surplus. *Id.* at 706. *See also In re Lynch*, Adv. Proc. No. 19-08119-AST, 2021 WL 1536392, at *3–*4 (Bankr. E.D.N.Y. Apr. 15, 2021) (same). Critically, however, neither case announced an absolute prohibition on a Chapter 7 debtor's standing. The real irony here is that those cases held that a Chapter 7 debtor lacks standing to object to a sale unless there could be a surplus, while this appeal

centers on the Chapter 7 Trustee's failure to conduct a sale of the Litigation Claims. Rest assured, had the Bankruptcy Court ordered a sale of the Litigation Claims, the Chapter 7 Debtor would have applauded rather than appealed.

Moreover, *In re Friedberg*, 634 F. App'x. 333 (2d Cir. 2016) is not controlling. There, the Second Circuit affirmed the judgment of the district court finding that a Chapter 7 debtor lacked standing to oppose approval of a settlement where a surplus was a "mathematical impossibility." *Id.* at 334. *See also In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000) ("Both the Bankruptcy Court and the District Court in this case found that there was no evidence that a surplus is a reasonable possibility in these proceedings . . . ."). The Bankruptcy Court below did not make such a finding in Mr. Ringel's Chapter 7 case, and could not do so without a trial since the Chapter 7 Debtor has repeatedly submitted extensive papers attacking the merits of the Judgment Creditors' claims, which, if expunged, could lead to a potential surplus.

## CONCLUSION

For the foregoing reasons, the Court should find that the Chapter 7 Debtor has the requisite standing to prosecute the appeal.

                              Goldberg Weprin Finkel Goldstein LLP

                              By:   /s/ Kevin J. Nash
                                     125 Park Avenue, 12th Floor
                                     New York, New York 10017
                                     (212) 221-5700
                                     *Counsel for Chapter 7 Debtor*

New York, New York
April 30, 2025