UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

In re:

BENJAMIN O. RINGEL,

                                                Debtor,

--------------------------------------------------------------------X

BENJAMIN O. RINGEL,

                                                Appellant,

              -against-

ALLAN B. MENDELSOHN, United States Trustee,
JDWC, LLC, ATALAYA ASSET INCOME FUND II LP,
LMEZZ 250 W90 LLC,

                                                Appellees.

--------------------------------------------------------------------X

**MEMORANDUM &
ORDER**
CV 25-0270 (GRB)

**FILED
CLERK**

2/11/2026 11:53 am

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**GARY R. BROWN, United States District Judge:**

The instant case is an appeal of debtor/appellant Benjamin O. Ringel ("Ringel" or "debtor") from an order entered by the Honorable Louis A. Scarcella, United States Bankruptcy Judge for the Eastern District of New York, approving a stipulation of settlement between the Trustee[1] and appellees JDWC, LLC ("JDWC"), Atalaya Asset Income Fund II, LP ("Atalya"), and LMezz 250 W90 LLC ("LMezz") (collectively the "Settling Creditors"), in the Chapter 7 bankruptcy proceeding captioned *In re Benjamin O. Ringel*, No. 24-71468-las.  The Trustee now moves to dismiss the instant appeal on the basis that the debtor lacks standing to bring this appeal.  For the reasons set forth below, the Court grants the Trustee's motion to dismiss the appeal.

---

[1] Appellee Allan B. Mendelsohn was appointed by the Bankruptcy Court as the trustee ("Mendelsohn" or "Trustee").

1

## BACKGROUND

On April 15, 2024, Ringel, represented by counsel, filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code (the "petition date'). Bankr. DE 1. On the same day, Mendelsohn was appointed the interim Chapter 7 Trustee and thereafter duly qualified as the permanent case Trustee.[2] Bankr. DE 1. In the debtor's case, (i) JDWC filed a proof of claim in the amount of $10,457,266.16, Bankr. DE 107 ¶ 21; (ii) Atalya filed a proof of claim in the amount of $6,049,999.90, *id.* ¶ 22; and (iii) LMezz filed a proof of claim in the amount of $16,753,726.51, *id.* ¶ 23.

### (1) Pre-Petition Background

Ringel was an active real estate investor whose companies were landlords to national tenants that encountered financial distress. DE 12 at 1. Prior to the petition date, Ringel was the sole member of BR Lakewood. Bankr. DE 107 ¶ 7. In turn, BR Lakewood held 50% interest in BCR Lakewood Holdings LLC ("BCR Lakewood"). *Id.* BCR Lakewood was the sole member of BCR Pinewood Realty, LLC ("BCR Pinewood"). *Id.* BR Lakewood also held 100% interest in BCR 12th Carey Realty, LLC ("BCR Carey") and 100% interest in BCR Gertners Realty, LLC ("BCR Gertners"). *Id.*

BCR Carey and BCR Gertners were fee owners of real property in Lakewood, New Jersey, known as Block 62, Lots 8 and 9 and Block 52, Lot 3 respectively (the" Carey and Gertners Properties"). *Id.* ¶¶ 9, 10. BCR Pinewood was the fee owner of real property in Lakewood, New Jersey, known as Block 104, Lot 2 (the "Pinewood Property"). *Id.* ¶ 8.

---

[2] Section 704 of the Bankruptcy Code establishes the duties of a trustee which include his obligations to collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest.

In 2016, JDWC obtained a judgment against the debtor in the amount of $9,484,241.02 which continues to accrue interest (the "JDWC Judgment").[3]  *Id.* ¶ 11.

On October 25, 2019, JDWC obtained a charging order from the Superior Court of New Jersey, Ocean County (the "New Jersey Court") against Ringel's interests in BR Lakewood, BCR Pinewood, BCR Gertners and BCR Carey (the "JDWC charging order").  *Id.* ¶ 14.  On March 8, 2023, Atalaya obtained a charging order from the Supreme Court of the State of New York (the "New York Court") against the debtor's interests in BR Lakewood, BCR Pinewood, BCR Gertners and BCR Carey, which was also recognized by the New Jersey Court (the "Atalaya charging order").  *Id.* ¶ 15.  LMezz also obtained a charging order from the New Jersey Court against Ringel's interests in BR Lakewood, BCR Pinewood, BCR Gertners and BCR Carey (the "LMezz charging order").  *Id.* ¶ 16.  The JDWC, Atalaya and LMezz charging orders perfected the security positions of the Settling Creditors in the debtor's various interests.  *Id.* ¶ 17.

On December 11, 2023, the New York Court entered an Order directing the turnover of 100% of Ringel's membership interests in BR Lakewood to Atalaya, as receiver (the "Turnover Order").  *Id.* ¶ 18.  On January 9, 2024, the debtor filed a notice of appeal to vacate the Turnover Order.  *Id.*  Separately, by Order dated January 25, 2024, the New Jersey Court granted JDWC's application to update the calculations on its Judgment.  *Id.* ¶ 12.  On March 11, 2024, Ringel filed a motion for reconsideration of the January 25, 2024 Order (the "Reconsideration Motion") (and together with the Turnover Order, "the Litigation Claims").  *Id.*

---

[3] The JDWC Judgment was affirmed on appeal by the Superior Court of New Jersey, Appellate Division in August 2023.  *Id.* ¶ 11.

The Pinewood Property was sold on March 28, 2024 and BR Lakewood's 50% interest in the net proceeds from the sale (approximately $19.4 million) were placed in escrow.

### (2) Post-Petition Background

On July 16, 2024, Atalaya obtained an order from the Bankruptcy Court confirming the absence of a stay regarding the proceeds from the Pinewood Property sale and permitting the New Jersey Court to approve the distribution of the proceeds to the creditors of BR Lakewood. The released funds satisfied various creditor's interests and claims against BR Lakewood and Ringel (the "Distribution Order").  *Id.* ¶ 20.  Pursuant to the Distribution Order, the JDWC, Atalaya and LMezz claims were reduced, but the Settling Creditors had amounts that remained, which were secured by the remaining assets of BR Lakewood, BCR Gertner and BCR Carey.[4] *Id.* ¶ 24.

Ringel's attorney moved to withdraw as counsel on September 24, 2024.  Bankr. DE 87. The Bankruptcy Court granted the motion on October 22, 2024.  Bankr. DE 105.

On October 23, 2024, the Trustee filed a motion to compromise a controversy with JDWC, Atalya and LMezz pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure,[5] which was amended on October 24, 2024 (the "Rule 9019 Motion").  Bankr. DE 106-07.  The proposed settlement agreement would (i) resolve the bankruptcy estate's interest in certain real property in New Jersey (the Carey and Gertners Properties), (ii) satisfy the balance due on the respective JDWC, Atalaya and LMezz Judgments, (iii) provide a mechanism to allow for the sale of the properties with a financial benefit being realized by the bankruptcy estate, (iv) dismiss the

---

[4] As of July 19, 2024, (i) JDWC was owed $818,856.24 (as well as $680,685.00 in attorney's fees); (ii) Atalaya was owed the sum of $296,741.02 (as well as $543,266.08); and (iii) LMezz was owed the sum of $14,729,753.81.  *Id.* ¶ 24.

[5] Rule 9019 provides "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement.  Fed. R. Bankr. P. 9019(a).

pending appeal of the Turnover Order with prejudice; and (v) withdraw the pending Reconsideration Motion with prejudice.  Bankr. DE 107.  Judge Scarcella scheduled a hearing on the Rule 9019 Motion for November 19, 2024.

Proceeding *pro se*, Ringel sought an adjournment of the hearing on the grounds that his counsel had declined to represent him.  Bankr. DE 114.  In addition, Ringel filed an untimely opposition to the Rule 9109 Motion and requested that the Court accept his supplemental documents.  Bankr. DE 116-18.  The Bankruptcy Court denied the debtor's request for an adjournment but granted his request for consideration of his supplemental opposition papers at the hearing.  Bankr. DE 119.

On November 19, 2024, the Bankruptcy Court held a hearing to address the Trustee's Rule 9019 Motion.  DE 2-11.  The Trustee and JDWC, Atalays and LMezz appeared by counsel, and the debtor appeared *pro se*.  *Id*.  After considering the record evidence, motion papers and opposition, arguments of counsel and Ringel, Judge Scarcella granted the motion approving the settlement agreement between the Trustee and the Settling Creditors.  Bankr. DE 120-21.  On November 22, 2024, the Bankruptcy Court entered an Order approving the Stipulation of Settlement (the "Settlement Order"), finding the factors set forth in *Mototola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) [6] weighed in favor of approving the motion to compromise and that the relief sought was in the best interests of the debtor's estate, its creditors and other parties in interest and was supported by good business reasons in accordance with Bankruptcy Rule 9019.  Bankr. DE 127.

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes and alterations.

Thereafter, Ringel retained new counsel, and on December 6, 2024, the debtor filed a motion to reconsider the Bankruptcy Court's Order approving the Trustee's settlement with creditors JDWC, Atalays and LMezz. Bankr. DE 138. The Bankruptcy Court scheduled an expedited hearing on December 19, 2024 to address the debtor's motion for reconsideration. Bankr. DE 142. The Trustee and JDWC filed their respective responses to the debtor's motion. Bankr. DE 143-44. Ringel, represented by counsel, filed a reply in support of his motion for reconsideration. Bankr. DE 147. The Bankruptcy Court held a hearing on December 19, 2024 and all parties were represented by counsel. Bankr. DE 149. After considering the arguments and representations of counsel, Judge Scarcella denied the motion for reconsideration on January 2, 2025. *Id*.

On January 14, 2025, Ringel filed a notice of appeal of the Bankruptcy Court's Order dated November 22, 2024, approving the Stipulation of Settlement, and the Order dated January 2, 2025, denying the motion for reconsideration (collectively the "Bankruptcy Court's Orders"). Bankr. DE 153-54; DE 1. The Trustee subsequently filed a motion to dismiss the appeal on the grounds that the debtor lacked standing to challenge the Bankruptcy Court's Settlement Order. DE 7.

Familiarity with the factual background, procedural history in both the Bankruptcy Court and this Court, and the parties' arguments are assumed. As discussed below, the Trustee's motion is granted, and the appeal is dismissed.

### STANDARD OF REVIEW

This Court has jurisdiction to review appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and

decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges."  28 U.S.C. § 158(a)(1), (3).  "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from district courts."  28 U.S.C. § 158(c)(2).  On an appeal the Court may "affirm, modify, or reverse a bankruptcy court's judgment, order, or decree" or it may remand with instructions for further proceedings.  Fed. R. Bankr. P. 8013.

A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact under a clearly erroneous standard.  *See In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009).  A finding is "clearly erroneous" when the reviewing court is left with the "definite and firm conviction that a mistake has been made."  *District Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010).  The clearly erroneous standard requires "strong deference" to "findings of fact based on credibility assessments of witnesses [the court] has heard testify."  *In re Pisculli*, 426 B.R. 52, 59 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011).  Moreover, "[a]n appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court might give the facts another construction [and] resolve the ambiguities differently."  *Id.* at 68.

Finally, discretionary rulings of a bankruptcy court are reviewed for abuse of discretion. *In re Tingling*, 990 F.3d 304, 307 (2d Cir. 2021).  "A bankruptcy court abuses its discretion when its ruling (1) rests on an error of law . . . or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions."  *In re Fletcher Int'l, Ltd.*, 661 F. App'x 124, 126 (2d Cir. 2016).

**DISCUSSION**

The Trustee contends that the Ringel lacks standing[7] to appeal the Bankruptcy Court Orders because the Trustee, upon his appointment, assumed the sole authority to litigate an appeal affecting the property of the estate on behalf of the debtor.  DE 7.  The debtor argues that he has standing to appeal the bankruptcy orders approving the settlement because he has a pecuniary interest in the disposition of the Litigation Claims.  DE 12.  Specifically, Ringel maintains that a potential surplus would have remained in the estate had the Trustee conducted an auction sale of the Litigation Claims and obtained the maximum value for the claims.  The debtor's argument is unpersuasive.

"Because standing is jurisdictional under Article III of the United States Constitution . . . it is a threshold issue in all cases since putative [individuals] lacking standing are not entitled to have their claims litigated in federal court."  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991); *see Warth v. Selden*, 422 U.S. 490, 498 (1975) (Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit").  Thus, if a debtor lacks standing to bring an appeal, the court lacks jurisdiction to decide the merits of the appeal.  *See Shearson Lehman Hutton, Inc.*, 944 F.2d at 117.  In addition to the requirements imposed by Article III, to have standing to appeal a bankruptcy court order, "an appellant must be a person aggrieved - a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court."  *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013).  An appellant must show "not only injury in fact under Article III but also that the injury is direct and

---

[7] Under Article III of the United States Constitution, "[t]he judicial Power of the Untied States extends only to certain Cases and Controversies."  *Lacewell v. Off. Of Comptroller of Currency,* 999 F.3d 130, 141 (2d Cir. 2021).  "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 408 (2013).

financial." *In re DBSD N. Am., Inc.,* 634 F.3d 79, 89 (2d Cir. 2011). "This test is stricter than Article III's injury in fact test, and its stringency is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *In re Barnet*, 737 F.3d at 242.

"The general rule is that, unlike creditors, Chapter 7 debtors lack standing to object to or appeal from orders of the bankruptcy court because the commencement of liquidation proceedings extinguishes any pecuniary interests that they formally held in the property of the estate." *Licata v. Coan*, No. 14-CV-1754, 2015 WL 9699304, at *5 (D. Conn. Sept. 22, 2015), *aff'd sub nom. In re Licata*, 659 F. App'x 704 (2d Cir. 2016) (explaining that "[d]ebtors generally lack standing because bankruptcy proceedings absolve the debtor of any liability to the creditors and the debtor has no interest in the distribution of the estate's property since the property has passed to the trustee"); *see Quest Ventures, Ltd. v. IPA Management IV, LLC*, No. 17-CV-4016 (JMA), 2018 WL 922145, at *1 (E.D.N.Y. Feb. 15, 2018) (noting that the Second Circuit has not addressed the issue of who can appeal on behalf of the debtor but concluding that "the general principles of bankruptcy law and the Supreme Court precedent dictate that once appointed, the trustee controls the debtor's actions, including the power to prosecute an appeal"). This principle is "based on the assumption that the success of the debtor's objection cannot affect him because the debtor receives a distribution only after all creditors have been paid in full, and an estate will rarely have enough assets to do even that." *Drake v. United States*, No. 1:13-CV-1136 (LEK), 2014 WL 6883104, at *2 (N.D.N.Y. Dec. 4, 2014), *aff'd* 622 F. App'x 42 (2d Cir. 2015).

However, the Second Circuit has recognized an exception to the general rule and has held that a Chapter 7 debtor "has standing to object to a sale of the assets or otherwise participate in

litigation surrounding the assets of the estate, only if there could be a surplus after all creditors' claims are paid." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000); *see In re Osborne*, 594 F. App'x 34, 35 (2d Cir. 2015) (holding a Chapter 7 debtor has standing to object "only where there is a reasonable possibility that the value of the bankruptcy estate assets exceeds estate debts"). "To establish standing, the Chapter 7 debtor has the burden of showing that there is at least a reasonable possibility of a surplus." *In re Licata*, 659 F. App'x at 70; *see In re 60 E. 80th St. Equities, Inc.*, 218 F.3d at 116 (holding where there is no evidence that a surplus is a reasonable possibility, the debtor lacks standing).

Moreover, some courts have found a pecuniary interest and granted a Chapter 7 debtor standing "even in the absence of a reasonable possibility of a surplus," where the debt is non-dischargeable, *see* 11 U.S.C. § 727, "because the debtor is not absolved of liability at the conclusion of the bankruptcy proceedings." *Drake,* 2014 WL 6883104, at *2; *cf. In re Yerushalmi*, No. 8:07-72816-las, 2019 WL 2385188, at *11 (Bankr. E.D.N.Y. June 5, 2019) (noting that lower courts within the Second Circuit and other jurisdictions have found that the non-dischargeability of a debt could confer standing upon a debtor where a successful objection to a proof of claim may reduce the debtor's personal liability on the alleged debt, and finding a pecuniary interest that would confer standing where there was no evidence that the estate was administratively insolvent and "a successful objection to the IRS' proof of claim [would] reduce [the debtor's] personal liability for his deficient taxes post-bankruptcy"); *In re Chaitan*, 517 B.R. 419, 426 (Bankr. E.D.N.Y. 2014).

In this case, the debtor has not demonstrated that he has standing to pursue this appeal. It is clear from the record that the bankruptcy estate is insolvent. In his voluntary Chapter 7 bankruptcy petition and schedules, Ringel set forth assets in the amount of $9,673,400 and

10

liabilities in the amount of $53,220,385, thus indicating that his liabilities far exceed his assets. Bankr. DE 23.  Nowhere in any of his submissions to this Court does Ringel establish even a reasonable possibility that the Trustee could produce a surplus for the estate.

The debtor's assertions regarding the Litigation Claims' maximum value are conclusory and speculative.  Although the debtor listed the Litigation Claims in Schedule "B" under [other contingent and unliquidated claims] of his bankruptcy petition, Ringel represented that each claim had been concluded.  The Trustee, therefore, considered the value of the claims in connection with the settlement approved by the Bankruptcy Court.  Notably, the Trustee made a business judgment that the estate had no funds to engage special council to prosecute the claims that the debtor alleged had value to the estate.  The Trustee concluded that the prosecution of the claims would not be beneficial to the estate as the debtor had litigated, relitigated and consistently argued in numerous courts issues that had been resolved, all against Ringel.

The sole pieces of evidence cited by Ringel to demonstrate a reasonable possibility of a surplus in his opposition brief are: (1) a letter dated March 27, 2024 from the debtor's counsel to Justice Cohen in the Supreme Court of the State of New York; and (2) a letter dated March 11, 2024 from the debtor's counsel to Judge Hodgson in the Superior Court of New Jersey.  Bankr. DE 138-4, Ex. C.  According to Ringel, the letters highlight the potential underlying value of the Litigation Claims.  DE 12 at 10-11.  The Court considers each letter in turn.

In the March 27, 2024 letter, counsel (and his firm Meister Seelig & Fein PLLC, "MLF"), who were recently retained by Ringel, sought a pre-motion conference to clarify whether Ringel and the firm MSF violated the Turnover Order.  Bankr. DE 138-4, Ex. C at 1.  Counsel stated that, "Mr. Ringel believes, that after Judge Hodgson determines what his creditors are owed (if anything), there may be a remaining surplus of millions of dollars." *Id.* at 2.  Counsel also

references "Mr. Ringel's belief that net proceeds from the sale of the Pinewood Property may run five times the judgment Atalaya claims to be owed." *Id.* at 3. Apart from the debtor's opinion, there are no other figures listed in the document nor additional information or context given for the potential valuation of the claims. Hence, Ringel's subjective belief regarding the potential value of the Litigation Claims set forth in the March 7, 2024 letter, without more, is remote and speculative.

The March 27, 2024 letter also references the March 11, 2024 letter, stating that the sole relief in the March 11, 2024 letter was that "[i]f any surplus proceeds become available, Mr. Ringel seeks solely to protect his interests in such surplus proceeds (if any) by ensuring that such proceeds are eligible for certain tax efficient sale structures." *Id*. In the March 11, 2024 letter to Judge Hodgson, counsel requested that the court modify its November 2016 Order "because of the potential for easily avoidable negative adverse tax consequences to Mr. Ringel" that could result from the net proceeds from the sale of the Pinewood Property (approximately $20 million) being held in escrow in a particular account. *Id.* at 2, 4-5. However, this letter is similarly unilluminating because the document says nothing regarding an appraisal of the Litigation Claims but instead seeks tax protection for an uncertain potential surplus from the sale. *See id.*

Moreover, Ringel's claim that he's reserving the right to refile a motion to convert the case to a Chapter 11 proceeding "as a further means to advance standing," DE 12 at 7, is conjectural.[8] Judge Scarcella addressed this argument at the Rule 9019 hearing and carefully explained to Ringel that the Bankruptcy Court "could not deal in a hypothetical and say, if this were a Chapter 11 case we would . . . ." DE 2-11 at 42-43. Judge Scarcella assured Ringel "if

---

[8] Notably, the debtor, through his original counsel, previously filed a motion to convert the instant Chapter 7 case to a Chapter 11 proceeding, but the motion was withdrawn. DE 2-11 at 20-21.

the case is ultimately converted to Chapter 11and there is an adversary proceeding brought before the Court, everyone would have a full and fair opportunity with respect to that adversary proceeding." *Id.*

Finally, apart from the debtor's argument that the valuation of the Litigation Claims was not maximized, Ringel has not shown how the Settlement Order adversely affects the non-dischargeability of debt. The debtor's reliance on *In re Mandel*, 641 App'x 400, 403 (5th Cir. 2016), where the Fifth Circuit found that a Chapter 7 debtor had standing to appeal a claim allowance where the claimants had filed an adversary proceeding to except the debt underlying their claim from discharge, is misplaced. Here, Ringel has not yet been granted a discharge in bankruptcy and unlike the debtor in *In re Mandel*, the creditors have not filed an adversary proceeding to except a debt from discharge. Although Ringel maintains that "he has no way" to reduce his personal liability without the Litigation Claims, as discussed above, the debtor failed to demonstrate a reasonable possibility that the sale of the Litigation Claims at an auction would generate a surplus of nonexempt assets to distribute to Ringel for the estate. On the contrary, the estate is administratively insolvent and the possibility that reversal of the Settlement Order would result in a reduction in the debtor's post-bankruptcy liability on a potential non-dischargeable debt is at most indirect and speculative and as such would impede the efficient and expeditious administration of the bankruptcy estate. *See In re Speer*, No. 3:16-cv-141-RNC, 2018 WL 1582516, at *2 (D. Conn. March 31, 2018) (observing that "[g]ranting standing to every debtor who happens to be subject to some non-dischargeable claim would interfere with the administration of [C]hapter 7 cases. Many debtors are subject to non-dischargeable claims. If every such debtor were suddenly entitled to take an active role in the trustee's administration of the case, the result would slow down the bankruptcy system and make it more costly").

13

Accordingly, the Court concludes that under the circumstances presented in this case, Ringel did not suffer a direct, financial injury from the Bankruptcy Court's Order dated November 22, 2024, approving the Stipulation of Settlement, and the Order dated January 2, 2025, denying the motion for reconsideration, and therefore lacks standing to appeal them.

Having determined that Ringel lacks standing, the Court does not reach the merits of his appeal. *See Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (holding that where a party lacks standing, "a federal court has no subject matter jurisdiction to hear the merits of the [party's] . . . claim"); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Inasmuch as the debtor lacks standing to appeal, this Court lacks jurisdiction over the action, and the appeal is accordingly dismissed.

### CONCLUSION

Based on the foregoing, the Court dismisses the appeal of the Bankruptcy Orders. The Clerk of the Court shall enter judgment accordingly and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
     February 11, 2026

          /s/ Gary R. Brown
          GARY R. BROWN
          United States District Judge

-

14